# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 8031 | **DATE** | July 20, 2010 |
| **CASE TITLE** | *Wayne Cable v. Agence France Presse, et al.* | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, Agence France Presse's motion to dismiss [16] is denied. This case is referred to the magistrate judge for purposes of supervising discovery, ruling on all non-dispositive motions and participating in settlement discussions at the appropriate time. Status is set for August 26, 2010, at 11 a.m.

■[ For further details see text below.]

00:00

## STATEMENT

Cable filed the instant complaint alleging various claims against Agence France Presse ("AFP") for its alleged misappropriation of Cable's proprietary photographs. AFP has moved to dismiss certain of the claims. For the reasons stated herein, the motion to dismiss is denied.

### I.    Facts

According to the well-pled allegations, which the court accepts as true for purposes of this motion, Cable is an experienced professional photographer who concentrates his work in the portrayal of people and architectural subject matters. Cable does business as *Selfmadephoto.com* and uses this designation as a means of source identification for his photography.

Agence France Presse is a news agency which owns and operates an online photo database known as ImageForum-Diffusion (*ImageForum*), which is devoted to licensing and otherwise marketing photographic images to an extensive range of customers.

On or about early September 2009, Cable was contacted by a Chicago luxury real estate firm, Matt Garrison Group ("Garrison"), to create photographic images of homes for Garrison's website. Cable created a series of color photographs depicting the interior and exterior of the property located at 5040 South Greenwood, Chicago, Illinois, and surrounding home and neighborhood views. Among the images created by Cable are photographs of the house next door to 5040 South Greenwood, which belongs to Barack Obama, the President of the United States. Cable and Garrison agreed that each use by Garrison of Cable's work be limited to use in Garrison's marketing materials and on its website for purposes of selling the property located at 5040 South Greenwood. Cable and Garrison further agreed that permission for use of the images for any other reason could be granted by Cable only. Moreover, Cable and Garrison agreed that Cable's photos were

to include authorship and source attribution with a credit line prominently and clearly identifying Wayne Cable/*Selfmadephoto.com* as the creator and source of the photos, including a hotlink to Cable's own website. Cable created these works and Garrison Group reproduced these images in its website and attributed them as follows "Photos©2009 wayne cable, selfmadephoto.com." This copyright notice was encoded as a hotlink which, when clicked on, took the user to Cable's own website.

Cable alleges that AFP caused these photos to be copied and infringed by, among other things, displaying reproductions on its website *ImageForum*, disseminating the reproductions worldwide via the Internet, distributing copies as reproduced on *ImageForum* through digital means as the purported licensor, and purporting to sub-license sales of the photos to third parties, all without Cable's permission. Cable also alleges that AFP deliberately removed Cable's photo credit and copyright notice.

Cable alleges the following nine counts: Count I–violation of the Digital Millenium Copyright Act, 17 U.S.C. § 1202, et seq. ("DMCA"); Count II–violation of the Lanham Act, 15 U.S.C. § 1125(a); Count III–violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 § 2; Count IV–III–violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, §§ 2(2), 2(3), 2(5) and 2(12); Count V–Unfair Competition; Count VI–violation of the Copyright Act, 17 U.S.C. § 501; Count VII–Liability against Doe I through Doe V[1]; Count VIII–Injunction; Count IX–Attorney's Fees and Exemplary Damages. AFP seeks to dismiss Count I through V pursuant to Fed. R. Civ. P. 12(b)(6).

## II.      Analysis

A.      <u>Count I</u>–DMCA

The DMCA states, in the relevant part,

> (b) **Removal or alteration of copyright management information**.-No person shall, without the authority of the copyright owner or the law--
> (1) intentionally remove or alter any copyright management information, (2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or
> (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law, knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202.

AFP contends that Cable cannot sustain a claim pursuant to the DMCA because the material that AFP allegedly removed or altered is not "copyright management information." According to the DMCA, "copyright management information" means "any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form . . . : . . . (2) The name of, and other identifying information about, the author of a work. (3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice

of copyright. . . ." 17 U.S.C. § 1202(c).

In support of its position, AFP points to certain courts' narrow interpretation of the term "copyright management information." For instance, in *IQ Group, Ltd. v. Wiesner Pub., LLC,* 409 F. Supp. 2d 587 (D.N.J. 2006), the court initially notes that § 1202 "appears to define 'copyright management information' quite broadly, to the point that the section, read literally, applies wherever any author has affixed anything that might refer to his or her name." *Id.* at 593. It then stated that "[e]xamination of the legislative history, as well as extrinsic sources, however, shows that the statute should be subject to a narrowing interpretation." *Id.* Specifically, after examining the legislative history of the DMCA, the *IQ Group* court concluded that:

> traditionally, the rights of authors have been managed by people, who have controlled access and reproduction. Through scientific advances, we now have technological measures that can control access and reproduction of works, and thereby manage the rights of copyright owners and users. Section 1202 operates to protect copyright by protecting a key component of some of these technological measures. It should not be construed to cover copyright management performed by people, which is covered by the Copyright Act, as it preceded the DMCA; it should be construed to protect copyright management performed by the technological measures of automated systems.

*Id.* at 597.

Based on this interpretation, AFP asserts that Cable does not plead that the identifying information (names, copyright notice and hotlink) would "function as a component of an automated copyright protection or management system" and, therefore, is not copyright management information as defined by the statute. Instead, AFP contends that Cable alleges only that the information was included only as a means of identifying the creator and owner of the images, and so under the decision in *IQ Group*, it is not copyright management information. *Id.* (concluding that logo and hyperlink were not copyright management information because "they functioned to inform people who would make copyright management decisions" and "there [was] no evidence that IQ intended that an automated system would use the logo or hyperlink to manage copyrights").

The plaintiff notes, however, that several courts have rejected the *IQ Group* court's conclusion regarding the meaning of copyright management information. For instance, in *Associated Press v. All Headline News Corp.*, 608 F. Supp.2d 454 (S.D.N.Y. 2009), the defendant moved to dismiss the DMCA claim on the ground that the information at issue was not copyright management information as defined by the *IQ* court. *Id.* at 461-62. The *Associated Press* court, noting that the *IQ* court "relied heavily on the DMCA's legislative history in reaching [its] conclusions about the goals and purpose of the DMCA and limiting its reach," rejected that approach. Instead, the *Associated Press* court followed Second Circuit precedent that "has held that legislative history should not be considered as a first resort, and that statutory language should be applied as written." *Id.* (citations omitted). Because the defendant had failed to provide any textual support in favor of limiting the definition of copyright management information, the *Associated Press* court denied the motion to dismiss this count. *Id.* at 462. *See also Interplan Architect, Inc. v. C.L. Thomas, Inc.*, No. 4:08-cv-03181, 2009 WL 6443117, at *5 (S.D. Tex. Nov. 13, 2009)("Because this Court does not find that the terms of Section 1202 are sufficiently ambiguous such that resort to legislative history is necessary, this Court does not adopt the findings in *Textile Secrets* [a case following *IQ Group*]. Because there is no textual support for Morris's contention that Section 1202 should be limited to technological processes, this Court declines to import such a limitation."); *Fox v. Hildebrand*, No. CV 09-2085 DSF

(VBKx), 2009 WL 1977996, at *3 (C.D. Cal. Jul. 1, 2009)(accepting plain language of the DMCA and noting that "Defendants cite two cases that analyze the legislative history of the DMCA to come to the opposite conclusion, but even given 'contrary indications in the statute's legislative history,' a court should 'not resort to legislative history to cloud a statutory text that is clear'")(citation omitted).

Likewise, the Seventh Circuit has stated that "'[s]tatutory interpretation begins with the plain language of the statute,'" *U.S. v. Ye*, 588 F.3d 411, 414-15 (7th Cir. 2009)(citation omitted), and further that "this court assumes that the purpose of the statute is communicated by the ordinary meaning of the words Congress used; therefore, absent any clear indication of a contrary purpose, the plain language is conclusive." *Id.* (citation omitted). Because under the plain language of the statute, the plaintiff's name and hotlink fall within the scope of "copyright management information," in the absence of evidence to the contrary, which may be considered in the context of future dispositive motions, the court denies the motion to dismiss this claim.

B.     Count II--Lanham Act

AFP next contends that the plaintiff has failed to state a claim under the Lanham Act because the claim is preempted by the Copyright Act. Specifically, Cable alleges that AFP wrongly claimed copyright in his photos or otherwise deliberately omitted or removed Cable's name or the tradename *Selfmadephoto.com* and his hotlink when reproducing Cable's photos. According to Cable, "Defendants' acts have been, and are threatened to be, committed with the intent to pass off the defendants' infringing uses, and in particular certain of the photographic Works . . . as being those of defendants and/or as being dissociated from plaintiff "Wayne Cable," or his firm . . . ." Comp. at ¶ 42. Thus, it appears that Cable is alleging a "reverse passing off" claim in which a party misrepresents another's product as its own. *Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576, 580-81 (7th Cir. 2005).

AFP argues that the decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), precludes this claim. In *Dastar*, the U.S. Supreme Court held that the phrase "origin of goods" as used in §43(a) the Lanham Act "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37. Thus, a claim for confusion as to "origin" applies to the producer of the good, not the original author of the idea or concept. The *Dastar* court reasoned that "[t]o hold otherwise would be akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may not do." *Id.*

However, the *Dastar* court also limited its ruling in one important way–it stated that a claim under § 43(a) "would undoubtedly be sustained if Dastar had bought some of New Line's Crusade videotapes and merely repackaged them as its own." *Id.* at 31. This is what the plaintiff has alleged–that AFP took the plaintiff's photos and repackaged them as their own without revision. Accordingly, the court denies the motion to dismiss the Lanham Act claim.

C.     Counts III, IV and V–Consumer Fraud and Deceptive Business Practices Act, Deceptive Trade Practices, Common Law Unfair Competition

AFP further argues that these three state law claims alleging violations of the Consumer Fraud and Deceptive Business Practices Act, the Deceptive Trade Practices Act, and common law unfair competition should also be dismissed because they rise and fall based on the Lanham Act claim. However, because the court has not dismissed the Lanham Act claim, and AFP has provided no other ground for dismissal, the motion to dismiss these counts is denied.

1.Though not entirely clear, it appears that this count seeks to impose liability for infringement or contributory infringement and unfair competition on the unnamed individuals and firms who purportedly acted in concert with AFP.